## STRASSER et al. v. BULKLEY.

### (Circuit Court of Appeals, Fourth Circuit. March 15, 1912.)

### No. 1,051.

CONTRACTS (§ 226*)—CONDITIONS—OPTION CONTRACT—PERFORMANCE.

Plaintiffs, having obtained an option on certain coal land, obtained its extension on giving certain trustees a positive assurance in writing that the coal field would be accepted, and depositing $10,000 with a trust company as a forfeit. Thereafter plaintiffs entered into a contract with decedent and another, whereby they agreed to cancel their option and extension so as to enable decedent and his associate to obtain a direct option on the field, in consideration of which surrender decedent and his associate agreed that, in the event they "exercised" their option, they would pay plaintiffs $4 an acre for the land taken thereunder. The new option was entered into and extended, and thereafter plaintiffs entered into a new agreement with decedent that, if he "elected to purchase" from the trustees or owners of the coal land in accordance with the extension, plaintiffs were to have the same compensation provided for in the original contract. *Held*, that such latter agreement by which plaintiffs were entitled to compensation in case defendants "elected to purchase" was not the same as the former one requiring an "exercise" of the option, and hence, decedent and his associate having entered into a contract to purchase the land, plaintiffs were entitled to recover, though such contract was never in fact accomplished.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1033–1037; Dec. Dig. § 226.*]

In Error to the Circuit Court of the United States for the District of Maryland, at Baltimore.

Action by L. S. Strasser and others against Ella R. Bulkley, executrix of Henry D. Bulkley, deceased. Judgment for defendant, and plaintiffs bring error. Reversed.

Some time prior to June, 1902, the control of a field of the lower Freeport veins of coal, underlying some 105 different tracts of land, belonging to as many different parties, situate in Alleghany and Westmoreland counties, Pa., had been secured to James McJunkin, George W. Reiter, John McMahon, Thomas E. Mallisee, and Albert Pahlman as trustees, and on June 23, 1902, these trustees, by written agreement, optioned this coal field to L. S. Strasser and T. C. Watkins, two of the plaintiffs herein, for a certain period and upon terms and conditions set forth. On October 3, 1902, this option was extended until April 1, 1903, provided on or before December 1, 1902, "positive assurance in writing" was given the trustees that the coal field would be accepted, and $10,000 was deposited in a Pittsburg Trust Company as a forfeit. On October 11, 1902, Strasser, Watkins, with Robert Heerlein, whom they had manifestly, in the meantime, joined in interest with them, holding this option, entered into a contract with H. D. Bulkley and J. Wilcox Brown, of Baltimore, whereby it was in substance agreed that Strasser, Watkins, and Heerlein should surrender and cancel this option and its extension; that Bulkley and Brown should take from the trustees direct an option for the field (under somewhat different and more liberal and explicit conditions as to mining rights), and, in consideration of such surrender by Strasser, Watkins, and Heerlein of their option, Bulkley and Brown should, in the event that they "exercised" this new option from the trustees to them, pay Strasser, Watkins, and Heerlein the sum of $4 per acre "on each and every acre so taken by them" thereunder. This new option between the trustees and Bulkley and Brown was entered into on this same 11th day of October, 1902. It was to run to April 1, 1903, but Bulkley

and Brown on or before January 2, 1903, were to deposit, as evidence of good faith, $1,000 in the trust company's hands, and, in case they should "exercise" the option, notice was to be given the attorney for the trustees on or before April 1st, and, after such "exercise" of the option, if the trustees were not able to convey at least 8,000 acres, Bulkley and Brown were not required then to take the field. The trustees extended this option to May 1, 1903, and subsequently to September 1, 1903, and thereupon, on March 12, 1903, Strasser, Watkins, and Heerlein and Bulkley and Brown entered into a further agreement whereby it was stipulated that "if said second parties hereto (Bulkley and Brown) elect to purchase from said trustees or owners the coal lands contemplated by the agreements heretofore made and referred to, under the options now outstanding or any extensions thereof, or new agreement relative thereto," then Strasser, Watkins, and Heerlein were to have the same compensation provided for by the original contract between them.

Bulkley and Brown had a complete technical examination of the coal field made by McRoberts, a civil engineer, who reported favorably to the purchase thereof by them, and on August 31, 1903, the day before the option, as extended, was to expire, a memorandum of agreement was made between Bulkley and Brown and the trustees which was next day embodied into a formal contract by the attorney for Bulkley and Brown and duly executed by them and the trustees, whereby, after reciting the option agreement and the extensions thereof, it is set forth: "Now the said H. D. Bulkley and J. Wilcox Brown, the said parties of the second part, hereby exercise their option and accept the coal covered by the option and agree to pay for the same under the terms and conditions of said agreements before referred to, subject to the revision of J. M. McRoberts, Eng., who is to determine what coal shall be paid for in pursuance of the various tests made in the field covered by said options. This being intended for and agreed upon by the respective parties hereto as an acceptance of the coal under the agreements and options above referred to. And it is further agreed by the said parties hereto that in the event of the failure of the said second parties to successfully finance and carry through the purchase of the said coal under said options hereby accepted, that they, the said first parties, will and do hereby release the said second parties from any claims, demands, actions or suits for damages or specific performance of contract." It is admitted that Bulkley and Brown entirely failed in successfully financing and carrying through the purchase of the coal, and did not, in fact, purchase an acre of it.

Strasser, Watkins, and Heerlein, for the use of Reinhardt and Brooks, instituted action at law in the court below based upon their demand of $4 per acre for 10,000 aggregate acres claimed under their contracts, above referred to, against Bulkley's executrix. A jury trial was had, and, by direction of the court, a verdict was rendered for the defendant and judgment was entered thereon in her favor, to which this writ of error has been sued out.

Edward M. Hammond (N. Rufus Gill & Sons, on the brief), for plaintiffs in error.

William S. Bryan, Jr. (A. De R. Sappington, on the brief), for defendant in error.

Before GOFF and PRITCHARD, Circuit Judges, and DAYTON, District Judge.

DAYTON, District Judge (after stating the facts as above). The decision of this case must practically be based upon the construction to be given the terms of the original and supplemental contracts between Strasser, Watkins, and Heerlein and Bulkley and Brown and the last contract (that of alleged acceptance) between the trustees and Bulkley and Brown.

The learned judge who tried the case below directed a verdict for defendant upon the theory that this last contract by its terms was in-

consistent and, that by reason of its last clause, in practical effect constituted the agreement to be an indefinite extension of the option.

Without discussing whether or not this construction is correct as between the parties to it, we must not overlook the fact that Strasser, Watkins, and Heerlein were not parties to it, and therefore it is only pertinent, as regards their rights and interests, in so far as it may, or may not, be held to be an "exercise" or acceptance under their contracts with Bulkley and Brown by which, alone, they are bound. Turning to these two contracts, we must concede, in fact it is not denied, that at the time the first one was executed they had, for a limited period, a vested right in and to the coal field in controversy, and that, in consideration of the surrender of this right and the agreement on their part that Bulkley and Brown might secure at once from the trustees a new option direct to themselves, Bulkley and Brown agreed that, in the event they should "exercise" their option, they would pay to them $4 per acre for each and every acre "so taken" thereunder.

It might well be a matter for discussion as to the construction to be placed upon the words "exercise" and "so taken" if they were subject to no further explanation than that afforded by their use alone in this contract, but it is vital in this connection to bear in mind that by the subsequent agreement, entered into March 12, 1903, the parties have removed all question as to their meaning in the use of these terms, for, in this last contract, the language is, "if said second, parties hereto elect to purchase from said trustees or owners the coal lands," then Strasser, Watkins, and Heerlein were to have their compensation. To "exercise" the option might be held to require a complete purchase and full taking over of the title, but the words "elect to purchase" can be given no such meaning. To elect to do a thing and to actually do it are entirely distinct processes. We are to bear in mind that this contract, providing for election only, was the last and final one between the parties. Did Bulkley and Brown "elect to purchase" these coal lands? We think clearly so by their contract of August 31, 1903. They over and again say so therein, and the clause which the court below held to be inconsistent with such election only relieved them from claim for damages on the part of the trustees in case they financially failed in ability to do what they thereby elected to do. There was no release by Strasser, Watkins, and Heerlein of this right to demand compensation upon their election to purchase.

It necessarily follows that the court below erred in directing the verdict and entering the judgment complained of and that such judgment must be reversed and the case remanded with directions to set aside the verdict and award a new trial.

As this case is remanded for further proceedings therein to be had, we deem it proper to call the attention of the court below to the contract dated August 24, 1909, between L. S. Strasser, Thomas C. Watkins, and Robert Heerlein and O. E. Reinhardt and Matthew R. Brooks, with the suggestion that it is worthy of consideration as to whether or not the same is champertous in character.

Reversed.